## COMMONWEALTH vs. MAXIME BELGARD.

On a trial for adultery, the evidence relied on to prove the defendant to be a married man was the testimony of a daughter of the alleged wife, to his cohabitation with her mother as his wife within the United States for ten years. On cross-examination, the witness testified that her mother previously lived with another man, the father of the witness, as his wife in a foreign country, and was there separated from him, and, as the witness supposed or understood, divorced; that the witness did not know whether he was still alive, or whether her mother was married to the defendant; and that the witness first saw the defendant after such separation, in that country, speaking to her mother. *Held*, that the defendant was entitled to ask the witness what he then said.

INDICTMENT for adultery with Josephine Frost. At the trial in the court of common pleas, the district attorney called Julia A. Belgard as a witness, who testified that the defendant was her stepfather, and had cohabited with Sarah Belgard, her mother, as man and wife, for ten years last past at Boston and Philadelphia, and had introduced her to his friends as his wife, and had children by her who had borne his name.

On cross-examination, the witness testified that she was seventeen years of age, and that eleven years ago her mother was living with Oliver Portri, as his wife, and bearing his name, at Bytown in Canada, and was there separated from him, receiving a house for her separate use, and the witness supposed her mother and father were divorced; that she did not know that her mother had had news from or of him since, or whether he was still alive; that afterwards, when she and her mother were residing together at Montreal, the defendant, who had been a clerk of Portri, visited the mother, and afterwards accompanied them to Boston, where the defendant cohabited with the mother as aforesaid, and gave the witness the name of Julia Belgard, which she had since borne; but that she did not know of the marriage of the defendant with her mother.

She also testified, upon cross-examination, that after going to Montreal she first saw the defendant while she was walking with her mother in the street, and he then and there spoke to her mother. The counsel for the defendant then asked " What did he then say to your mother? " To this question the district

attorney objected, on the ground, among others, that the evidence for the Commonwealth had been confined to the cohabitation and acts of the defendant and Sarah Belgard, subsequent to their arrival at Boston. And *Sanger*, J. sustained the objection, and would not permit the question to be put. The jury found the defendant guilty, and he alleged exceptions.

*B. Sanford*, for the defendant.

*J. H. Clifford*, (Attorney General,) for the Commonwealth

Merrick, J. The circumstance chiefly relied upon by the government at the trial to establish the fact alleged in the indictment, that the defendant was a married man at the time of the commission of the act charged against him, was his long cohabitation with the mother of the witness Julia Belgard. This, under the provision of our statute, was competent evidence for the consideration of the jury; but it was by no means conclusive that the parties had ever been lawfully married; for their cohabitation may have been unlawful. *Sts.* 1840, *c.* 84; 1841, *c.* 20. Rev. Sts. *c.* 130, § 4. Whether it was the one or the other, was the material fact involved in the issue between the parties, and was to be determined by the jury in view of all the facts and circumstances proved upon the trial. As the presumption of law is always in favor of the innocence of a party until his guilt has been legally established, the inference to be deduced from the fact that a man and woman have openly and professedly dwelt together as husband and wife, and held themselves out to the community as bearing that relation to each other, when no counteracting circumstances or explanations are adduced in evidence, is, undoubtedly, that they have been duly united in the bonds of lawful marriage. But as such an inference is not necessarily to be drawn under all possible circumstances, it must, at his election, be the right of a defendant, in repelling a criminal accusation, to produce evidence of facts and circumstances tending to show that, in his particular case, no such inference could justly or truly be deduced from cohabitation, because he had never in fact been lawfully married.

We think therefore that, in this case, the presiding judge erred in not permitting the defendant to ask the witness on

cross-examination what he said to her mother, his supposed wife, when they first met in Montreal. We do not know what the reply would have been ; but the object of the interrogation obviously was to educe an explanation of the origin of the intercourse between the parties, and to show that their subsequent cohabitation was not the result of a marriage, but of an arrangement for an unlawful connection with each other. The circumstances related by the witness concerning her mother were very peculiar. She did not know, but supposed or had understood, that her mother had been divorced from her former husband ; nor did she know whether he was dead or still living. And she was equally ignorant of the fact of any marriage having ever taken place between her mother and the defendant. She knew that they dwelt together as husband and wife. Thus far she had given evidence on the part of the government. She apparently knew, also, something of the terms proposed by the defendant, or agreed to by the parties, concerning their future cohabitation. As this would tend to explain the fact proved in support of the prosecution, and to show that the inference of marriage deduced from it by the government was erroneous, the witness should have been required to answer the question proposed to her by the defendant. It may be that it would have been effectual and decisive in his defence. But the court did not permit his interrogatory to be answered. As he was deprived of his right to lay before the jury what may have been a controlling explanation of the material fact from which his marriage with Mrs. Portri was to be inferred by them, the verdict rendered against him cannot be sustained. It is therefore set aside, and a

*New trial ordered.*